UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-21005-CIV-ALTONAGA

**ATLANTIS MARINE TOWING**
**SALVAGE & SERVICES, INC.**,

    Plaintiff,

vs.

**JAMES J. SIM**,

    Defendant.
_____/

## ORDER

**THIS CAUSE** came before the Court on Plaintiff, Atlantis Marine Towing Salvage & Services, Inc.'s ("Atlantis['s]") Motion for Summary Judgment ("Motion") [ECF No. 54], filed January 24, 2014, containing a Statement of Material Facts. (*See* Mot. ¶¶ 1–20). On February 10, 2014, Defendant, James J. Sim ("Sim") filed a Response in Opposition to Plaintiff's Motion for Summary Judgment ("Response") [ECF No. 58], accompanied by a Response in Opposition to Plaintiff's Statement of Material Facts . . . ("Defendant's SMF") [ECF No. 60], filed February 14, 2014. On February 20, 2014, Atlantis filed its Reply . . . ("Reply") [ECF No. 61]. The Court has carefully considered the parties' written submissions, the record, and applicable law.

### I. BACKGROUND

This case involves a damages claim stemming from the recovery of Sim's vessel, the S/V Vita ("Vita") from a spoil island[1] near Dinner Key, Florida after Tropical Storm Isaac. (*See* Amended Complaint 1, ¶¶ 3, 6–9 [ECF No. 11]). On August 26, 2012, Tropical Storm Isaac

---

[1] A spoil island is a man-made island surrounded by rocks, which preserve the integrity of the island. (*See* Mot. ¶ 10; Def.'s SMF ¶ 10).

struck the coast of Florida.  (*See* Mot. ¶ 7; Def.'s SMF ¶ 7).  The Vita, which was located at Dinner Key Marina, came loose from its mooring during the storm and was set adrift.  (*See* Mot. ¶¶ 7–8; Def.'s SMF ¶¶ 7–8).  The Vita ultimately ran aground near a spoil island located half a mile south of Dinner Key Marina.  (*See* Mot. ¶ 9; Def.'s SMF ¶ 9).

The next day, Captain Burt Korpela ("Captain Korpela") spoke to Sim over the phone, and Sim asked the Captain to put the boat back on its mooring at Dinner Key Marina.  (*See* Mot. ¶ 14; Def.'s SMF ¶ 14).  The parties agree the following conversation took place:

> SIM: "Burt, you're at the boat?"
> CAPTAIN KORPELA: "Yeah.  Do you want me to pull it off?"
> SIM: "Yeah, Burt, please put it back on the mooring."

(Mot. ¶ 14 (citing Deposition of James Sim ("Sim Deposition") 67:12–25 [ECF No. 54-1]); Def.'s SMF ¶ 14).

Atlantis claims it "found the Vessel hard aground on the rocks of the spoil island," and as a result the salvage operation was complex and risky, requiring over ten hours to extricate the Vita safely.  (Mot. ¶ 17).  After Atlantis completed its work, the Vita was returned to safe harbor without further damage, and Atlantis invoiced Sim for its services in the amount of $18,625.  (*See id.* ¶¶ 17–18; Def.'s SMF ¶ 18).

Sim has not paid the invoice, alleging Atlantis "offered a simple tow and subsequently performed a complicated and unnecessary salvage operation."  (Answer and Affirmative Defenses to Amended Complaint ("Answer") ¶ 68 [ECF No. 36]).  Sim asserts he understood Atlantis to be offering a simple tow service, rather than a complex salvage.  (*See* Resp. 10–12). Because of the size, weight, and shape of the boat, Sim insists the boat could not have run aground on the rocks surrounding the spoil island so as to require the salvage Atlantis claims it was required to perform.  (*See* Def.'s SMF ¶¶ 9–11, 19).  Sim insists the Vita must have run

aground on the sand prior to reaching the rocks of the spoil island, and therefore could have been pulled from its location with a simple tow. (*See id.* ¶¶ 16, 19).

At his deposition, Sim testified he understood "pull it off" to mean "[y]ou hook ropes to [the vessel] and you use something with an engine in deep water and you do what you can do to the boat to make it move the way you want it to move." (Resp. 11 (quoting Sim Dep. 102:7–20)). Sim further testified the Vita had run aground on the sand near the spoil island before, and he had himself performed the relatively simple service he expected of Atlantis multiple times. (*See* Resp. 6–7 (quoting Sim Dep. 37:9–38:19)). Sim maintains he accepted and expected to pay for a simple tow — about $400. (*See* Def.'s SMF ¶ 16 (citing Sim Dep. 107:8–14)).

In its Amended Complaint, Atlantis asserts four counts, all different theories of recovery for the same claim — Atlantis's recovery of the Vita. (*See generally* Am. Compl.). Atlantis presently moves for summary judgment on Count I of its Amended Complaint (breach of contract), or, in the alternative, Counts III (quantum meruit) and IV (unjust enrichment).[2] (*See* Mot. 1). In its Motion, Atlantis asserts it had an enforceable oral agreement to salvage the Vita. (*See* Mot. 7–11). In the alternative, Atlantis argues it conferred a benefit on Sim and is entitled to damages under theories of quantum meruit and unjust enrichment. (*See* Mot. 12). Sim insists critical fact issues remain in dispute regarding the existence of an oral contract (*see* Resp. 1–2), and similarly preclude summary judgment on Atlantis's claims of quantum meruit and unjust enrichment (*see id.* 14–16).

## II. LEGAL STANDARD

Summary judgment shall be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact

---

[2] Atlantis does not seek summary judgment on Count II of its Amended Complaint for "pure maritime salvage." (Am. Compl. 5; *see generally* Mot.).

and that the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a), (c). "[T]he court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995) (alteration added; internal quotation marks omitted)). "An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Burgos v. Chertoff*, 274 F. App'x 839, 841 (11th Cir. 2008) (quoting *Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (internal quotation marks omitted)). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Channa Imps., Inc. v. Hybur, Ltd.*, No. 07-21516-CIV, 2008 WL 2914977, at *2 (S.D. Fla. Jul. 25, 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The movant's initial burden on a motion for summary judgment "consists of a responsibility to inform the court of the basis for its motion and to identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (alterations and internal quotation marks omitted)). "[T]he plain language of Rule 56 mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (quoting *Celotex*, 477 U.S. at 322 (alterations and internal quotation marks omitted)).

### III. ANALYSIS

**A. Breach of Contract (Count I)**

Atlantis argues it is entitled to summary judgment on its breach of contract claim because Sim's acceptance of Atlantis's services during the phone conversation created an oral contract, and by refusing to pay Atlantis $18,625, Sim has breached the parties' oral contract. (*See* Mot. 8–11). Atlantis further argues disagreement regarding the price to be paid for Atlantis's services is not a genuine dispute of material fact, because "an express agreement on a given sum or rate is not an essential term necessary to establish the existence of a binding oral agreement for salvage services." (*Id.* 10 (citing *Flagship Marine Servs., Inc. v. Belcher Towing Co.*, 966 F.2d 602, 605–06 (11th Cir. 1992))). Sim maintains no express contract was ever created between the parties, as "there was no meeting of the minds on the essential terms of the alleged Contract." (Resp. 14).

Under Florida law, to prevail on a claim for breach of contract, a plaintiff must establish "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*, 857 F. Supp. 2d 1294, 1301 (S.D. Fla. 2012) (quoting *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009)). A contract is not enforceable unless "'there has actually been a meeting of the minds of the parties upon definite terms and conditions which include the essential elements of a valid contract.'" *Leopold v. Kimball Hill Homes Fla., Inc.*, 842 So. 2d 133, 136 (Fla. 2d DCA 2003) (quoting *Mehler v. Huston*, 57 So. 2d 836, 837 (Fla. 1952)). "Furthermore, to prove a breach of an oral contract, a plaintiff must establish that the parties mutually assented to a certain and definite proposition and left no essential terms open." *Merle Wood & Assocs., Inc.*, 857 F. Supp. 2d at 1301 (internal quotation marks and citations omitted); *see also Rubenstein v. Primedica*

5

*Healthcare, Inc.*, 755 So.2d 746, 748 (Fla. 4th DCA 2000).

Atlantis asserts Sim, in accepting Atlantis's services, "formed [a] verbal agreement over the telephone that [Atlantis] would pull the Vessel off from where it had run aground at the spoil island." (Mot. ¶ 15 (alterations added)). Atlantis argues no essential terms were left open as "the parties agreed and formed a meeting of the minds that Atlantis would perform the services necessary to pull the Vessel off the spoil island, where both parties knew and understood it had run aground after it broke loose from its mooring during Tropical Storm Isaac." (Reply 5). Atlantis maintains the parties, in establishing a verbal agreement, "understood that Mr. Sim would be charged reasonable and customary rates for these services." (Mot. ¶ 15). Atlantis further states its invoice, in amount of $18,625, "represents reasonable and customary rates for the services performed by Atlantis." (*Id.* 11).

Although Sim concedes he accepted a service from Atlantis, he maintains he accepted a simple towing job, rather than a complex salvage operation. (*See* Resp. 12, 14). Sim asserts no oral contract for salvage services exists between the parties, arguing "there was absolutely no meeting of the minds on exactly what services were offered, exactly what services w[]ere to be provided, and what agreement, if any, was accepted by the Defendant, Sim." (*Id.* 10 (alteration added); *see also* Def.'s SMF ¶ 14 (stating there was no "meeting of the minds or agreement as to the scope of services to be provided")). Sim testified he would have declined Atlantis's services if Captain Korpela had mentioned anything other than "pulling it off," which Sim understood to mean Atlantis would tow the Vita. (Resp. 12 (quoting Sim Dep. 107:1–14)). Sim claims "he was misled into believing that a simple tow would be accomplished and thereafter presented with a full-blown salvage invoice." (Def.'s SMF ¶ 16).

Atlantis relies on *Belcher Towing* to argue the lack of an express agreement as to price

does not preclude the Court from finding an oral contract exists between the parties, asserting price "is not an essential term necessary to establish the existence of a binding oral agreement for salvage services." (Mot. 10 (citing *Belcher Towing Co.*, 966 F.2d at 605–06)). In *Belcher Towing*, the captain of an imperiled vessel was on-site and made a binding agreement for services at the scene of the salvage operations. *See Belcher Towing Co.*, 966 F.2d at 603, 605. The court, in finding a oral contract existed between the parties as a result of the parties' exchange at the scene, noted the plaintiff "had previously charged Belcher for salvage work on a flat running rate basis, and Captain Diamond [the captain of the distressed vessel] normally paid for such salvage services." *Id.* at 603 (alteration added).

Unlike in *Belcher Towing*, where the defendant was clearly aware of the scope of services necessary to salvage the vessel and had prior familiarity with the plaintiff's rates for salvage work, Sim disputes he agreed to a salvage operation in the first place, asserting the physical qualities of the Vita make it unlikely the service Atlantis undertook was even necessary. (*See* Resp. 12). Price is not the sole disputed essential term; Sim maintains the entire scope of the services that were to be provided is at issue. (*See* Resp. 10, 15–16). The only evidence Atlantis has presented regarding the existence of a definite oral contract is the phone conversation between Captain Korpela and Sim. (*See* Mot. ¶ 14). Sim maintains that conversation with Captain Korpela did not establish an oral contract for an eighteen-thousand-dollar salvage, but rather a four-hundred-dollar tow, and insists he did not agree to the salvage operation Atlantis performed. (*See* Resp. 10–12, Def.'s SMF ¶¶ 14–16).

Clearly questions of fact precluding summary judgment remain, as Atlantis has not "establish[ed] that the parties mutually assented to a certain and definite proposition and left no essential terms open." *Leopold*, 842 So. 2d at 136. *See also Tardif v. People for Ethical*

*Treatment of Animals*, 829 F. Supp. 2d 1219, 1224 (M.D. Fla. 2011) ("'An oral contract, such as the one in this case, is subject to the basic requirements of contract law such as offer, acceptance, consideration, and sufficient specification of essential terms.'" (quoting *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004))). Atlantis argues the exchange between Captain Korpela and Sim created an express oral contract as a matter of law, but the parties dispute the meaning of "pull it off" as it was used in the conversation between Captain Korpela and Sim. (*See* Mot. ¶ 15; Def.'s SMF ¶ 15). Atlantis, as the moving party, has not demonstrated a sufficient specification of essential terms so as to enable the Court to find an express oral contract exists as a matter of law. Accordingly, summary judgment on Atlantis's claim for breach of oral contract (Count I) is inappropriate.

### B. Quantum Meruit (Count III) and Unjust Enrichment (Count IV)

Atlantis alternatively requests the Court grant summary judgment "in its favor under theories of quantum meruit and unjust enrichment." (Mot. 12). Atlantis argues even if the Court does not find an express contract was established, Atlantis is nevertheless entitled to damages for the work performed, as Sim has been unjustly enriched by the provision of services for which he did not pay. (*See id.* 12–14). Sim responds summary judgment is improper because questions of fact exist regarding the services Sim accepted as well as the value of those services. (*See id.* 15–16).

Atlantis's quantum meruit and unjust enrichment claims are based upon the idea of an implied contract or a quasi-contract. *See Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co., Inc.*, 695 So. 2d 383, 386 (Fla. 4th DCA 1997) ("To describe the cause of action encompassed by a contract implied in law, Florida courts have synonymously used a number of different terms — 'quasi contract,' 'unjust enrichment,' 'restitution,' 'constructive

contract,' and 'quantum meruit.'" (footnote call numbers and footnotes omitted)). "Florida law prescribes four elements for quantum meruit and unjust enrichment claims." *Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*, 714 F.3d 1234, 1237 (11th Cir. 2013) (citing *Commerce P'ship 8098 Ltd. P'ship*, 695 So. 2d at 386). To prevail on quantum meruit and unjust enrichment claims, a plaintiff must show: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred; and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it. *See id.* (citing *Commerce P'ship 8098 Ltd. P'ship*, 695 So. 2d at 386).

Disputed issues of material fact exist regarding the "fair value" of the benefit with respect to Atlantis's unjust enrichment claim. *See Merle Wood & Assocs., Inc.*, 857 F. Supp. 2d at 1307 ("[T]he determination of whether the payment was fair is a question of fact."). In seeking summary judgment "under theories of quantum meruit and unjust enrichment," Atlantis asserts "the invoice for $18,625 represents reasonable rates for the services performed by Atlantis . . . ." (Mot. 12–13). Compensation on a claim for unjust enrichment, however, is "measured in terms of the benefit to the owner, not the cost to the provider." *Tooltrend, Inc. v. CMT Utensili, SRL*, 198 F.3d 802, 806 n.5 (11th Cir. 1999) (citing *Levine v. Fieni McFarlane, Inc.*, 690 So. 2d 712, 713-14 (Fla. 4th DCA 1997); other citations omitted). Sim has disputed the value of the benefit conferred, testifying he expected to pay $400 for the Vita to be towed from its location. (*See* Def.'s SMF ¶ 16 (citing Sim Dep. 107:8–14)). Sim correctly notes the value of the services in question is a question of fact for the factfinder. (*See* Resp. 16).

Furthermore, even if Atlantis could satisfy all four elements, the Court cannot grant summary judgment on Atlantis's claims of quantum meruit and unjust enrichment because

9

questions of fact remain regarding the existence of an express contract between the parties. "'[A] plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter.'" *1021018 Alberta Ltd. v. Netpaying, Inc.*, No. 8:10-CV-568-T-27MAP, 2011 WL 1103635, at *5 (M.D. Fla. Mar. 24, 2011) (quoting *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. 1st DCA 2008)). *See also Webster v. Royal Caribbean Cruises, Ltd.*, 124 F. Supp. 2d 1317, 1326 (S.D. Fla. 2000) ("[Q]uantum meruit damages cannot be awarded when an enforceable contract exists." (footnote call number and citations omitted)). Because there may be an express oral contract between Atlantis and Sim for the services performed by Atlantis, as Atlantis asserts, it is premature to allow Atlantis to recover damages possibly covered by a contractual relationship under quasi-contract theories. Accordingly, summary judgment as to Counts III and IV of the Amended Complaint is also inappropriate.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Summary Judgment **[ECF No. 54]** is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 8th day of April, 2014.

_Cecilia M. Altonaga_
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record